IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSEPH T. MUIGAI | * | |
| Plaintiff | * | |
| v. | * | Civil No. **PJM 10-1119** |
| IMC CONSTRUCTION, INC., et al. MARYLAND, et al. | * | |

**MEMORANDUM OPINION**

Plaintiff Joseph Muigai, *pro se,* has sued International Management Consultants, Inc. ("IMC") [1] and two of its employees, Edward Shields and James Kerr, in their individual capacities, for claims arising from the alleged nonpayment of construction work. Against IMC he alleges Breach of Contract (Count I), Quantum Meruit (Count II), and Unjust Enrichment (Count III). Against Shields and Kerr he alleges Breach of Contract (Count IV).

IMC, Shields, and Kerr have filed a Motion to Dismis*s* for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the Alternative, for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. § 1, et seq. [Document No. 11]

For the reasons that follow, the Motion is **GRANTED**.

---

[1] The Complaint incorrectly identified International Management Consultants, Inc. as IMC Construction, Inc.

**I.**

This is a dispute between a contractor and a subcontractor over the alleged nonpayment for construction work. The contractor, IMC, is a corporation organized under the laws of Pennsylvania and the subcontractor, Muigai,[2] is a resident of Maryland. The Complaint also asserts a claim of breach of contract against Shields and Kerr in their individual capacities.[3]

The gist of Muigai's claim is that IMC was the general contractor for construction projects at the Mall at Prince Georges[4] in Hyattsville, Maryland (the "Prince Georges Project") and at the Patrick Henry Mall in Newport, Virginia (the "Patrick Henry Project"). Muigai alleges that he and Shields, the project manager for the Prince Georges Project, made an oral agreement under which Muigai would perform "Punch List" work at the Prince Georges Project, that based on that agreement Muigai performed the work, and that he was never paid. Muigai further alleges that on June 15, 2006 he submitted an invoice to Shields requesting payment of $74, 943 by IMC for the work performed. According to Muigai, after several conversations with Shields and not receiving payment, on March 5, 2010, he sent Shields a letter demanding payment along with a copy of the invoice. Then, by a letter dated March 17, 2010, Shields denied payment for the indicated work, stating that all moneys owed to CMS for work performed on the Prince

---

[2] Originally, this action was brought by Plaintiffs CMS Construction ("CMS") and Joseph Muigai. After the Court informed Plaintiffs that CMS Construction could not bring an action without legal representation, Muigai amended the Complaint to remove CMS Construction from the case. It is unclear whether CMS Construction is or ever was a legal entity. Muigai alleges it is not and never was and that at all relevant times he was operating under the fictitious name "CMS Construction." The Court notes, however, that Muigai's Amended Complaint relies on an invoice issued by CMS Construction and signed by Joseph Muigai. [Document No. 3, Exhibit B]. For purposes of this Opinion, the Court considers Muigai and CMS one and the same.
[3] Shields and Kerr are residents of Pennsylvania.
[4] The Mall at Prince Georges, located in Prince George's County, Maryland, opened in 1958 under the name Prince George's Plaza. On November 14, 2004 it was renamed The Mall at Prince Georges.

2

Georges Project had been paid in full as evidenced by a fully executed Final Release of Liens and Final Release of Claims.

Muigai further alleges that Shields referred him to Kerr, the project manager for the Patrick Henry Project, regarding work needed at that site. According to Muigai, Kerr requested that he relocate three kiosks at the Patrick Henry Project (the "kiosk moving work") and that Muigai orally agreed to perform the work at the same rates as he charged at the Prince Georges Project. The Complaint also appears to allege that Muigai submitted an invoice for payment of $24,000 for kiosk moving work to Shields (not to Kerr), but no copy has been submitted to the Court.[5] In the March 5, 2010 letter, Muigai also demanded payment for the kiosk moving work. By a letter dated March 17, 2010, Kerr denied payment for the indicated work, stating that IMC has no record of Muigai doing work for the Patrick Henry Project.

Thus Muigai alleges that he entered into two separate oral agreements with IMC and demands judgment for $98,943.00. He contends that those agreements were silent regarding the forum for dispute resolution.

In response, IMC says that on August 13, 2003 IMC and CMS entered into a Subcontract for construction work to be performed at the Prince Georges Project.[6] According to the Subcontract, Muigai agreed to a broad arbitration clause that required all disputes "arising out of or relat[ing]" to the Subcontract to be submitted to arbitration. IMC asserts that the alleged punch list work invoiced for $74,943, if in fact requested by IMC, would constitute one more of several change orders executed under the Subcontract and would therefore be subject to the Subcontract's arbitration clause.

---

[5] Muigai has not pleaded the timeframe when the kiosk moving work was allegedly performed or the date when the invoice for that work was allegedly submitted to Shields.
[6] A copy of the Subcontract entered between IMC and CMS has been filed with the Court.

As for the kiosk moving work allegedly performed for the Patrick Henry Project, IMC alleges that it has no record of a contract between IMC and Muigai or CMS for work at that site, but that if an oral contract exists for kiosk moving work, the Court lacks diversity jurisdiction to entertain Muigai's claim. IMC argues that since Muigai's claim for punch list work must be resolved through arbitration, the $24,000 claim for kiosk moving work fails to meet the $75,000 minimum amount in controversy required for diversity jurisdiction under 28 U.S.C. § 1332(a).[7]

Shields and Kerr submit that, assuming that any oral contract alleged exists, Muigai has failed to show that they entered into said contracts in their individual capacities and not on behalf of IMC.

## II.

## Claims Against IMC

### A.

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Division of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir.1999). When considering a 12(b)(1) motion, the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment" to help determine whether it has jurisdiction over the case before it. *Id.* at 647; *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir.1991). A court should grant a 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* at 768.

---

[7] While IMC has not argued that the dispute over work supposedly performed at the Patrick Henry Project is subject to arbitration, the Court nonetheless considers whether the oral contract, if in fact made, would be encompassed by the arbitration agreement in the Subcontract. *See* Section II.B.2, i*nfra*.

4

**B.**

The Federal Arbitration Act ("FAA) embodies a federal policy favoring arbitration. 9 U.S.C. § 1, et seq. A court should enforce an arbitration agreement where such agreement is (1) part of a contract or transaction involving interstate commerce, and (2) valid under general principles of contract law. *See* 9 U.S.C. § 2. If all issues in a proceeding are arbitrable, "dismissal is a proper remedy;" accordingly, a party may properly invoke the FAA through a motion to dismiss. *Choice Hotels International Inc. v. BSR Tropicana Resort Inc*., 252 F.3d 707, 709–10 (4th Cir. 2001).

Unless parties have unambiguously provided for an arbitrator to decide questions of arbitrability, it is for courts to decide whether the parties agreed to arbitrate the particular claims at issue. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 79-80 (2002). To determine whether all or part of an action should be sent to arbitration, the Court must consider: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and (3) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir.2004). However, the Supreme Court has instructed that, when addressing "questions of arbitrability," a court must observe "a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25; *see also Wachovia Bank, Nat'l Ass'n v. Schmidt,* 445 F.3d 762, 767 (4th Cir. 2006); *Long* v. *Silver,* 248 F.3d 309, 316 (4th Cir. 2001) (citation omitted).

In addition, the Fourth Circuit has adopted a "significant relationship test" such that where the parties' original contract contained an arbitration clause, all claims that are related to the original contract and arise out of the same facts, circumstances, project or business relationship, are also subject to arbitration. *American Recovery Corp.* v. *Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 93 (4th Cir. 1996); *Long* v. *Silver,* 248 F.2d at 316 ("broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained.").Thus, a court "may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 316. Even when two distinct contracts are at issue, the first of which contained an arbitration clause and the second was silent as to dispute resolution, the Fourth Circuit has held that the arbitration agreement of the initial contract may govern the entire relationship between the parties, including claims for breach of the subsequent agreement "provided that the dispute 'significantly relates' to the first agreement." *General Electric Capital Corp.* v. *Union Corp. Financial Group, Inc.,* 142 Fed.Appx. 150, 152 (4th Cir. 2005); *see also American Recovery,* 96 F.3d at 94 (holding that the relevant issue "is not whether a claim arose under one agreement or another, but whether a significant relationship exists between the claim and the agreement containing the arbitration clause").

In this case, paragraph 12 of the Subcontract's Purchase Order General Conditions states as follows:

> If a dispute arising out of or relates [sic] to this Contract, or breach thereof, and if the dispute cannot be settled through pre-litigation negotiations, the Contractor

6

and Subcontractor agree, at the Contractor's sole election, to first subject the
dispute to arbitration administered by the American Arbitration Association
under its Construction Industry Arbitration Rules whereby a judgment on the
award rendered by the Arbitrator(s) my [sic] be entered in any Court having
jurisdiction thereof. Under such circumstances, the Arbitrator(s) shall have the
exclusive power to determine issues of arbitrability. Such arbitration shall be
final and binding upon the parties.

Muigai does not dispute the validity of the Subcontract or of the arbitration clause. And since Muigai himself has argued that he is one and the same as CMS, he is bound by any agreement made by CMS. The Court finds that the Subcontract between IMC and CMS is an agreement involving interstate commerce and its arbitration clause creates an arbitration agreement between the parties that is valid and enforceable under the FAA. 9 U.S.C. § 2.  Muigai alleges, however, that he entered into two separate oral contracts with IMC for punch list work and kiosk moving work, independently of the Subcontract, such that any dispute arising from such contracts is not subject to arbitration. He is wrong.

By its own terms, the arbitration clause applies to any dispute "arising out of or relat[ing]" to the Subcontract. This type of clause is considered sufficiently "broad," that it may apply to disputes outside the context of the agreement itself. *See e.g. Long,* 248 F.2d at 316 (holding that broadly-worded arbitration clauses can apply to disputes that do not arise under the governing contract).

Moreover, the arbitration clause states that "the Arbitrator(s) shall have the exclusive power to determine issues of arbitrabilty." Generally, the question of arbitrabilit*y* is an issue for judicial determination unless the parties "clearly and unmistakably" provide otherwise. *Howsam*

*v. Dean Witter Reynolds, Inc.*, 537 U.S. at 79-80. Where the parties have agreed to submit the arbitrability decision to an arbitration panel, as is the case here, a court must defer to the arbitrator's decision on arbitrability and perform only "a second, more limited inquiry to determine whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1374–75 (Fed. Cir. 2006) (citation omitted); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). The Court looks at the claims under each of the alleged oral contracts.

### 1. Punch List Work

Muigai claims he entered into an oral contract with IMC, through Shields, to perform punch list work at the Prince Georges Project which was entirely independent from the Subcontract. IMC claims that any alleged agreement is part of a series of change orders that arose out of, referred to, and became a part of the original Subcontract relationship between the parties. In the alternative, IMC asserts that assuming that a separate oral agreement existed, Muigai's claims have a significant relationship to the Subcontract such that the dispute is still encompassed by the Subcontract's arbitration clause.

The Court has reviewed the Subcontract for construction work at the Prince Georges Project and the twelve written change orders, the last of which was issued in December 2004. The invoice for punch list work introduced by Muigai lists work dating from March 2005 onward. Whether the alleged work was performed on the basis of a change order or an independent oral contract with IMC, the Court finds that the punch list work arises out of and relates to the Subcontract. IMC's claim that the present dispute is within the scope of the arbitration agreement is not "wholly groundless." Accordingly, Muigai is obliged to pursue his claim with respect to the punch list work at the Prince Georges Project through arbitration.

In any case, to the extent there remains any doubt as to the applicability of the arbitration provision to the dispute, the Court is constrained by the language of the arbitration provision which provides that, "the Arbitrator(s) shall have the exclusive power to determine issues of arbitrability." IMC's Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(1) is **GRANTED WITHOUT PREJUDICE** as to the claims related to punch list work.

## 2. Kiosk Moving Work

Muigai also claims that he entered into an oral contract with IMC, through Kerr, to perform kiosk moving work at the Patrick Henry Project. The date of performance is not clearly stated in the Complaint and it appears that the scope of Muigai's work at that site was limited to the alleged kiosk moving work. The parties do not dispute that the alleged oral contract involves work at a locale not referred to in the Subcontract. The question before the Court, assuming an oral contract exists, is whether it is encompassed within the business relationship created by the Subcontract, such that the arbitration agreement of the Subcontract applies. The Court finds that the kiosk moving work is so encompassed.

An arbitration clause in one agreement may extend to a dispute arising under a second agreement if the dispute is significantly related to the agreement containing the arbitration clause. *General Electric Capital Corp,* 142 Fed.Appx. at 152. The Court finds that the Subcontract and the alleged oral agreement are intimately related in that they involve the same parties, the same type of work, and the same scale of fees.[8] As such, it is at least conceivable that

---

[8] The Complaint states that Muigai agreed to perform the work at the same rates as he charged for work performed at the Prince Georges Project, that he met with Kerr at Shield's direction, and that he submitted the original invoice for kiosk moving work to Shields, the manger of the Prince Georges Project, with whom he maintained a close business relationship, and not to Kerr.

the dispute arising out of the alleged oral contract is covered by the arbitration clause. But as the Court has said, the final question of arbitrability is for the Arbitrators to decide.

In any case Muigai faces an insurmountable jurisdictional hurdle even if the kiosk moving work under the alleged oral contract is deemed unrelated to the Subcontract and not subject to arbitration. With the Prince Georges Project punch list work out of the case because it must be arbitrated, the Court lacks subject matter jurisdiction to entertain the Patrick Henry Project claim because it fails to meet the jurisdictional amount in controversy for diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). Muigai seeks only $24,000, whereas the jurisdictional floor in diversity cases is $75,000. Accordingly, IMC's motion to Dismiss under 12(b)(1) is also **GRANTED WITHOUT PREJUDICE** as to the claims related to kiosk moving work.

## III

## Claims against Shields and Kerr

### A.

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). To survive a motion to dismiss the complaint must assert facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "But where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed.R.Civ.Proc. 8(a)(2)).

**B.**

To state a claim for breach of contract, a plaintiff must plead the existence of a contractual obligation owed by the defendant to the plaintiff and a material breach of that obligation. *RRC Ne., LLC v. BAA Md., Inc.,* 413 Md. 638, 658, 994 A.2d 430 (2010).

Here Muigai has pleaded that he entered into two oral contracts -one with Shields for punch list work and a second one with Kerr for kiosk moving work -  and that Shields and Kerr breached the contract by failing to pay for the work performed. At the same time, Muigai also pleads that Shields and Kerr were the project managers for IMC and says that their request for construction work was made on behalf of IMC. He also alleges that he submitted invoices and requests for payment to IMC and not to Shields or Kerr in their individual capacities. Because Muigai acknowledges that the alleged contract was for work to be performed for IMC and that he always dealt with Shields and Kerr in their capacities as IMC employees, he has not adequately pleaded the existence of independent contracts that Shields or Kerr entered into in their individual capacities.  Accordingly, Count IV of the Complaint against Shields and Kerr is **DISMISSED WITH PREJUDICE**.

**IV**

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss [Document No.11] **WITHOUT PREJUDICE** as to Counts I, II and III against IMC and **WITH PREJUDICE** as to Count IV against Shields and Kerr.

Final judgment will be entered in favor of IMC, Shields, and Kerr and the case will be **CLOSED**.

A separate Order will **ISSUE**.

                                                  /s/
                            **PETER J. MESSITTE**
                      **UNITED STATES DISTRICT JUDGE**

**May 5, 2011**